32151. ABBOT INVESTMENT COMPANY *v.* JEFFERSON COUNTY.

DECIDED OCTOBER 14, 1948.

*Wright Abbot*, for plaintiff.

*Eugene Cook, Attorney-General, Henry N. Payton, E. L. Reagan, Assistant Attorneys-General, M. H. Blackshear, Q. L. Bryant, Frank Hardeman*, for defendant.

PARKER, J. Abbot Investment Company sued Jefferson County for $1079.26 as damages to a truck and trailer alleged to have been incurred as the result of the defective construction and maintenance of a bridge on a public highway in Jefferson County. The case was tried before a jury, and upon the conclusion of the evidence the court directed a verdict for the defendant in the following words: "The court is of the opinion that a verdict for the plaintiff would not stand in this case, and directs a verdict for the defendant. It appears from the evidence that there was a 6000-pound load-limit sign on the bridge, and that the weight of the truck and the load was something like 30,000 pounds, and under these circumstances under the law the plaintiff cannot recover. I direct that you find a verdict for the defendant."

The plaintiff made a motion for a new trial on the general grounds, which was amended by the addition of two special grounds complaining of the direction of the verdict. The court overruled the motion and the exception here is to that ruling.

As we see the record in this case, the sole question presented is whether there was any issue of fact made by the evidence suffici-

ent to take the case to the jury. The plaintiff's evidence tended to show: That its agent and employee, driving a truck and trailer 40 feet long and loaded with 5000 brick weighing about four pounds each, entered upon the bridge in question on a State-aid road at a speed of from 15 to 20 miles per hour; that, as the front wheels of the truck rolled onto the bridge, the structure began to give way, and observing that the bridge was about to collapse under him, and being unable to stop, the driver speeded up and managed to get the truck nearly across, the rear wheels thereof striking the embankment on the opposite side of the stream as the bridge collapsed, while the wheels of the trailer dropped with the bridge into the stream. The driver of the truck testified: "As I approached that bridge I did not see any load-limit sign, I later saw a load-limit sign at the bridge, there was a load-limit sign on the other side of the bridge, on the Stapleton side. I did not see a load-limit sign on the bridge on the side as I approached it from Louisville, I looked to see if there was one as I approached and I did not see one." On cross-examination, he said: "I did not see a load-limit sign on the right-hand side of that bridge going north, I did not particularly look for one, I was not looking for one, but I don't remember seeing one." Another witness for the plaintiff who was riding on the truck with the driver when the bridge collapsed testified: "As to whether I noticed any load-limit sign on Louisville side of that bridge as I came up on the Louisville side, I didn't see one on that side, but I saw one on the far side." Other evidence of a negative nature tending to show that there was no load-limit sign on the side of the bridge from which the truck approached was offered by the plaintiff. The plaintiff also introduced evidence tending to show improper maintenance and construction of the bridge, and the use of inferior materials in its construction.

The defendant introduced evidence tending to show: that ordinary and reasonable care was used in the construction and maintenance of the bridge, including the use of proper material in its construction; that proper load-limit signs had been erected and were displayed on both sides or approaches to the bridge at the time of the occurrence, this latter contention being supported by the positive testimony of several witnesses; and that the plaintiff's truck and load exceeded the limit so posted.

The Code, § 95-1001, provides that "in every case the county shall be primarily liable for all injuries caused by reason of any defective bridges," but under § 95-1710 the State Highway Department is responsible for all damages awarded against any county under existing laws, whenever the cause of action originates on highways, jurisdiction over which shall have been assumed by said highway department. The liability of any county or of the highway department under these sections is modified by the provisions of § 95-1723, which reads as follows: "The State Highway Department is authorized to ascertain and determine the maximum load or weight that can, with safety, be transported over any bridge and its approaches on a State-aid road. The State Highway Department shall be authorized to post on any such bridge a legible notice showing the maximum amount which it has been ascertained such bridge or its approaches can carry with safety. It shall be unlawful for any person to haul, drive, or otherwise bring on such bridge or its approaches, any load or weight exceeding the rated capacity so ascertained and posted, and any person hauling, driving, or otherwise bringing on any such bridge or its approaches any load or weight exceeding the rated capacity so ascertained and posted shall do so at his own risk, and the State shall not be liable for any damages to persons or property that may result therefrom." A reasonable construction of this statute would seem to require a sign or signs visible from both approaches to a bridge.

The evidence as to the construction and maintenance of the bridge made issues of fact, which should have been presented to the jury unless the plaintiff is barred from a recovery by reason of the provisions of § 95-1723. The determination of this question depends upon a consideration of positive testimony on the part of the defendant's witnesses and testimony of a negative character by the plaintiff's witnesses. While the Code, § 38-111, provides that "The existence of a fact testified to by one positive witness is to be believed, rather than that such fact did not exist because many witnesses who had the same opportunity of observation swear that they did not see or know of its having existed," this does not mean that negative testimony is of no probative value whatever. " 'Negative evidence' does not amount to no evidence at all; otherwise the term would be a misnomer.

And jurors are not obliged to discard it merely because of the existence of positive evidence in conflict therewith. 'Where the existence of a fact was affirmed by positive evidence and denied by negative evidence, an issue was raised, and the trial judge committed no error in properly submitting such issue to the jury.' *Western & Atlantic R. Co.* v. *Mallett,* 23 *Ga. App.* 367 (2) (98 S. E. 238). Negative evidence is only a species of circumstantial evidence." *Georgia Railroad & Bkg. Co.* v. *Wallis,* 29 *Ga. App.* 706, 714 (116 S. E. 883). See also *Hunter* v. *State,* 4 *Ga. App.* 761 (62 S. E. 466), and *Pendergrast* v. *Greeson,* 6 *Ga. App.* 47 (64 S. E. 282). Under these authorities, it is our opinion that whether or not the bridge had load-limit signs posted thereon was also issuable and could not be determined by the court as a matter of law. The weight of the testimony on this question and as a whole was for the jury, and the verdict for the defendant was improperly directed.

*Judgment reversed. Sutton, C. J., and Felton, J., concur.*